**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

**DAWN MAY BUNCH,**
Plaintiff,

v.

**E-GYM NORTH AMERICA, INC.;**
**YMCA OF GREATER MONTGOMERY,**
Defendants.

Civil Action No. 1:25-cv-03486-CNS-TPO

**NOTICE OF PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT YMCA OF GREATER MONTGOMERY'S MOTION TO DISMISS**

1. Plaintiff, Dawn May Bunch, pro se, respectfully submits this **Response in Opposition to Defendant YMCA of Greater Montgomery's Motion to Dismiss Pursuant to Rule 12 (ECF No. 45)** in the above-captioned matter.

2. Plaintiff has previously filed her Complaint and Amended Complaint, and the Court has accepted and docketed those pleadings, directed amendment, and addressed default and motion practice involving YMCA.

3. Through this Response, Plaintiff opposes YMCA's request for dismissal on personal-jurisdiction, venue, and Rule 12(b)(6) grounds, and asks the Court to keep her case in the District of Colorado and allow her negligence claim against YMCA and product-liability claim against E-GYM North America, Inc. to proceed.

4. In the alternative, if the Court determines that jurisdiction or venue over YMCA is lacking, Plaintiff respectfully asks the Court not to dismiss her claims on technical venue or jurisdiction grounds, but instead either retain the case in the District of Colorado or, if necessary, transfer the YMCA claim to an appropriate federal district in Alabama in the interest of justice.

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF COLORADO**

**DAWN MAY BUNCH,**

Plaintiff,

v.

**E-GYM NORTH AMERICA, INC.;**

**YMCA OF GREATER MONTGOMERY,**

Defendants.

Civil Action No. 1:25-cv-03486-CNS-TPO

**PLAINTIFF'S RESPONSE IN OPPOSITION TO DEFENDANT YMCA OF GREATER MONTGOMERY'S MOTION TO DISMISS**

Plaintiff Dawn May Bunch, proceeding pro se, respectfully submits this Response in Opposition to Defendant YMCA of Greater Montgomery's Motion to Dismiss Pursuant to Rule 12 (ECF No. 45). Plaintiff requests that the Court deny the motion and allow her negligence claim against YMCA to proceed in the District of Colorado, or, in the alternative, transfer her claims rather than dismiss them so they may be resolved on the merits.

## I. BACKGROUND

Plaintiff's Amended Complaint alleges that on October 31, 2023, she sustained serious injuries while using a Robotic E-GYM Leg Press machine at the YMCA Bell Road facility in Montgomery, Alabama. The machine allegedly malfunctioned, forcefully compressing Plaintiff's knees into her chest and causing radiating pain and subsequent sacroiliac joint dysfunction, piriformis syndrome, and sciatic nerve involvement.

Plaintiff's narrative is as follows: After using the Robotic E-GYM Leg Press on October 31, 2023, Plaintiff did not experience excruciating pain until the next morning,

November 1, 2023, when she was in the sauna at YMCA Bell Road with her daughter. As Plaintiff lifted her left leg to sit down on the sauna bench, she suddenly felt severe, debilitating pain in her left lower back and hip, and immediately told her daughter she was in pain and needed help walking out of the sauna.

Plaintiff instructed her daughter to assist her to their dressing area, but she was unable to walk that far, so Plaintiff asked her daughter to lay her on the floor in front of the dressing area to relieve the excruciating pain that left her unable to walk at that time.

Plaintiff's daughter then called Plaintiff's husband because Plaintiff was unable to drive, helped Plaintiff put on her clothing, and supported her while walking her out of the women's locker room and sauna area into the lobby to wait for her husband. Only then did a male YMCA staff member ask Plaintiff if she needed a wheelchair; Plaintiff declined because sitting was too painful, but she still required assistance from her daughter and husband to leave the facility.

Plaintiff subsequently sought emergency medical treatment on November 4, 2023, and the emergency room record was later corrected to reflect that the injury occurred at the YMCA Bell Road gym, not at home. The emergency room documentation listed bulging lumbar disc and sciatica, and the discharge record states "Certified medical emergency: Yes." Plaintiff also later obtained amended medical documentation (an "In Error" report) confirming that the injury occurred at the Bell Road YMCA gym, consistent with the nursing triage and ED chief complaint noting onset of upper back pain on October 31 while at the YMCA.

Plaintiff asserts a negligence claim against YMCA Bell Road based on its duty to maintain safe equipment and provide reasonable assistance during medical emergencies, and a product-liability claim against E-GYM North America, Inc., which manufactured and distributed the E-GYM Leg Press to the YMCA Bell Road location.

Plaintiff seeks compensatory damages for medical treatment, pain and suffering, emotional distress, and loss of enjoyment of life.

Plaintiff's Amended Complaint also explains that her injuries and functional limitations disrupted her ability to walk, dress, perform household duties, attend social activities, exercise, and play golf with her family, and contributed to weight gain and depression due to loss of trust in fitness environments and fear of being injured again.

This case has been pending in the District of Colorado for a substantial period of time. The Court has accepted Plaintiff's Complaint and Amended Complaint, assigned a civil action number, directed amendment of her pleadings, addressed the Clerk's entry of default against YMCA, and considered YMCA's motion to set aside default and its motion to dismiss. The Court is therefore familiar with the parties, the incident, and the nature of Plaintiff's claims.

**II. PERSONAL JURISDICTION**

YMCA moves to dismiss for lack of personal jurisdiction, arguing that it is an Alabama nonprofit corporation with its principal place of business in Alabama and no alleged contacts with Colorado. Plaintiff respectfully opposes dismissal at this stage and requests that her claims not be terminated based on contested jurisdictional arguments, particularly given her pro se status and the intertwined nature of the claims against both defendants.

Plaintiff's Amended Complaint alleges that E-GYM North America, Inc. manufactured and distributed the Robotic E-GYM Leg Press to the YMCA Bell Road facility, and that YMCA Bell Road housed the machine and made it available to members. Plaintiff's injuries arise from the combined actions of both defendants—the manufacturer/distributor and the premises owner/user of the machine. The case is already properly situated in Colorado as to E-GYM, which operates out of Colorado and is closely connected to the product-liability

claim. Plaintiff respectfully submits that, in light of this connection and the Court's existing management of the case, the more appropriate course is to allow jurisdictional issues regarding YMCA to be addressed through further factual development and, if necessary, by transfer rather than outright dismissal. As a pro se litigant, Plaintiff should be afforded a fair opportunity to develop jurisdictional facts through discovery, rather than having her negligence claim dismissed at the pleadings stage.

To the extent the Court concludes that personal jurisdiction over YMCA is lacking, Plaintiff requests that the Court exercise its discretion under 28 U.S.C. § 1406(a) to transfer her claim to a district in Alabama where jurisdiction is undisputed, rather than dismissing the claim. Such a transfer would preserve Plaintiff's rights and allow her claims to be resolved on the merits.

**III. VENUE**

YMCA also argues that venue in the District of Colorado is improper, asserting that it does not "reside" in Colorado and that the incident occurred in Alabama. Plaintiff acknowledges that the physical incident took place at the YMCA Bell Road facility in Montgomery, Alabama, but respectfully submits that venue in Colorado is appropriate for at least the claims against E-GYM, and that keeping the claims together promotes efficiency and avoids piecemeal litigation in multiple states.

E-GYM North America, Inc. manufactured and distributed the E-GYM Leg Press that injured Plaintiff, and upon information and belief, its principal operations are tied to Colorado. Plaintiff's product-liability claim arises directly from E-GYM's design, manufacture, distribution, and safety decisions concerning the machine. Those contacts support venue and adjudication of the product claim in this District.

YMCA's negligence claim arises from the same incident and the same machine. Requiring Plaintiff to litigate her product-liability claim against E-GYM in Colorado while

separately pursuing premises-liability claims against YMCA in Alabama would increase costs, cause delay, and risk inconsistent outcomes. Plaintiff therefore asks the Court to view the case as a single controversy involving both the manufacturer and the premises owner, and to avoid dismissal on venue grounds.

If the Court ultimately determines that venue over YMCA is more appropriate in an Alabama district court, Plaintiff again requests transfer, not dismissal. The statute explicitly contemplates transfer "in the interest of justice," and here, justice favors preserving Plaintiff's claims and allowing another federal court to consider the same record rather than forcing Plaintiff to re-file and restart her case.

**IV. FAILURE TO STATE A CLAIM (RULE 12(b)(6))**

YMCA contends that Plaintiff's negligence claim is "conclusory" and fails to allege factual support for duty, breach, and notice under Alabama premises-liability law. Plaintiff respectfully disagrees. Her Amended Complaint provides specific facts regarding the incident, the machine malfunction, the conduct of YMCA staff, and the serious injuries and limitations that followed.

**A. Plaintiff does state her claim in the Amended Complaint**

Plaintiff has already stated her negligence claim against YMCA Bell Road in detail in her Amended Complaint. She identifies the date of the incident, the location, the specific machine involved, the conduct of YMCA staff, and the resulting medical conditions, pain, and life disruptions. She also states the duty owed—"to maintain safe equipment and provide reasonable assistance during medical emergencies"—and alleges that YMCA breached that duty, causing her injuries and damages. These factual allegations are sufficient under Rule 8 and Rule 12(b)(6), especially when construed liberally for a pro se litigant.

Specifically, Plaintiff alleges:

- That she was injured when the Robotic E-GYM Leg Press machine malfunctioned at YMCA Bell Road on October 31, 2023.
- That YMCA Bell Road staff were present, one male employee offered a wheelchair, which Plaintiff refused solely because she was in excruciating pain and unable to sit at that time, and no further assistance was provided despite her obvious distress.
- That later, that same YMCA employee claimed he had no knowledge of asking Plaintiff if she wanted a wheelchair, creating a factual dispute about what assistance was actually offered.
- That Plaintiff then required help from her daughter and husband to leave the facility, was unable to walk or dress without assistance, experienced sleep disruption, and sought emergency medical treatment on November 4, 2023.
- That Plaintiff continues to suffer ongoing pain, numbness, muscle spasms, and functional limitations, disrupting her role as a wife and mother, her social activities, and her trust in fitness environments, and contributing to weight gain and depression. These allegations go beyond "labels and conclusions." They describe a specific incident, a malfunctioning machine housed on YMCA's premises, the presence and limited response of staff, a conflicting staff account about the wheelchair offer, and detailed resulting injuries and damages.

**B. Similar leg-press and gym-injury cases support Plaintiff's theories**

Plaintiff's claims are also consistent with how courts and juries have treated similar leg-press and gym-equipment injury cases in other jurisdictions, which reinforces that her theories are legally viable and should proceed beyond the pleading stage.

In **Ferreira v. Top Fitness Store / Hudson Steel** (D.N.H. 2026), a leg press/hack squat station failed during first use and crushed the plaintiff's legs, causing

severe and disabling injuries. The plaintiff asserted strict product liability, manufacturing defect, negligence, and breach of warranty claims against both the seller and the manufacturer, and an equipment inspection revealed mislabeled locking-mechanism components that caused the safety system to fail. Like Plaintiff's case, Ferreira involved a leg press machine that malfunctioned, product-liability theories against the manufacturer, and dual defendants responsible for placing the defective equipment into use.

In **Bostick v. Flex Equipment Co. / Gold's Gym** (Cal. 2006), the plaintiff sued Flex Equipment (the manufacturer) for product-liability design defect and Gold's Gym (the premises owner) for premises liability after suffering catastrophic injury on a Smith machine. Gold's Gym settled pretrial for approximately $7.3 million, and the jury returned a $14.4 million verdict against the manufacturer, for a total recovery of about $18.6 million. Although the equipment there was a Smith machine rather than a robotic leg press, the dual-defendant structure and the theory that the equipment was defectively designed—lacking adequate safety features—directly parallels Plaintiff's product-liability claim against E-GYM and her premises-liability claim against YMCA.

In **Leka v. HealthQuest Fitness** (N.J. App. Div. 2017), a hack squat machine "dropped and crushed" the plaintiff under 600–700 pounds of weight. The plaintiff's industrial engineer expert testified that the machine lacked lower safety stops, product warnings, and safety instructions, and a kinesiology specialist described the machine as creating an "unreasonably dangerous condition." This case closely matches Plaintiff's mechanism of injury—a leg-press-type machine forcefully compressing the user and causing serious back and nerve injuries. Leka is a cautionary example as to the gym because the facility prevailed on summary judgment based on its position outside the chain of distribution and limited proof of notice, but it underscores how missing safety

features and warnings on leg-press-type equipment support product-defect theories against manufacturers like E-GYM. Plaintiff's premises-liability claim against YMCA can be distinguished by showing that YMCA housed the machine, had direct involvement with its use and maintenance, and failed to respond adequately when Plaintiff was visibly injured.

Settlement data also reflect the seriousness of spinal and back injuries in gym environments. In one New York health club case, a 28-year-old woman complained of pain during a personal training session, was told to continue, and eventually suffered a lumbar herniated disc requiring fusion surgery. She obtained a $2.25 million settlement after alleging that the gym and trainer were negligent in providing a safe exercise environment and in ignoring clear warning signs of injury. Plaintiff's narrative—immediate excruciating pain on the E-GYM Robotic Leg Press, inability to sit resulting in refusal of the offered wheelchair, worsening pain, and eventual diagnoses of sacroiliac joint dysfunction, piriformis syndrome, and sciatic nerve involvement—follows a similar arc of immediate-onset pain progressing to serious structural injury.

Design-defect leg-press claims have been allowed to proceed in cases such as **Vautour v. Body Masters Sports** (N.H. 2001) and **Bodymasters Sports Indus. v. Wimberley** (Ga. App. 1998). In Vautour, the New Hampshire Supreme Court reversed a directed verdict for the defendant, holding that the plaintiff's strict-liability design-defect claim involving a leg-press machine should have gone to the jury. In Wimberley, the Georgia Court of Appeals held that even if a danger associated with a leg-press device was open and obvious, that factor alone was not dispositive of whether the machine was defectively designed. These decisions support Plaintiff's argument that her product-liability design-defect theory against E-GYM is legally viable and should not be dismissed at the Rule 12. Gym-maintenance failures have also supported negligence

and gross-negligence findings even in the face of waivers.

In **Chavez v. 24 Hour Fitness** (Cal. App. 2015), blank maintenance logs, eyewitness accounts of cables snapping, and the absence of preventive-maintenance records created a triable issue of gross negligence and undermined the gym's waiver defense. Plaintiff intends to seek YMCA's maintenance records for the Robotic E-GYM Leg Press; if those records are similarly incomplete or inconsistent with known malfunctions, Chavez provides a strong model for arguing that YMCA's failure to maintain or inspect the machine created an unreasonably dangerous condition for invitees like Plaintiff.

Taken together, these cases show that Plaintiff's combined product-liability claims against E-GYM and premises-liability claims against YMCA fit well within recognized and successful patterns of gym-equipment litigation. They reinforce that her Amended Complaint states claims that are appropriate for discovery and, if warranted, trial, and should not be dismissed at the pleading stage.

Plaintiff therefore respectfully submits that she has stated a claim against YMCA in her Amended Complaint, and that any additional factual detail can be developed through discovery rather than requiring dismissal at the pleadings stage.

**V. REQUEST FOR RELIEF**

For the foregoing reasons, Plaintiff respectfully requests that the Court:

1. Deny Defendant YMCA of Greater Montgomery's Motion to Dismiss pursuant to Rule 12(b)(2), 12(b)(3), and 12(b)(6);
2. Allow Plaintiff's negligence claim against YMCA and product-liability claim against E-GYM to proceed in the District of Colorado; and
3. In the alternative, if the Court determines that personal jurisdiction or venue over YMCA is lacking, transfer Plaintiff's claim against YMCA to an appropriate federal

4. district in Alabama under 28 U.S.C. § 1406(a) rather than dismissing the claim, so that Plaintiff's rights are preserved and her claims can be decided on the merits.

Plaintiff respectfully asks the Court not to dismiss her claims on technical venue or jurisdiction grounds, but instead either retain the case in the District of Colorado or, if necessary, transfer the YMCA claim in the interest of justice.

Respectfully submitted this __3rd__ day of __August_, 2026.

**/s/ Dawn May Bunch**
Dawn May Bunch
Plaintiff, Pro Se
723 Common Widgeon Way
Hopkins, SC 29061
Telephone: 803-573-6226
dawnbunch33@gmail.com

CERTIFICATE OF SERVICE

I hereby certify that on this __3rd__ day of __August_, 2026, I electronically filed the foregoing **Plaintiff's Response in Opposition to Defendant YMCA of Greater Montgomery's Motion to Dismiss**, together with the Notice and this Certificate of Service, with the Clerk of Court using the CM/ECF system, which will send notification of such filing to registered counsel of record, including:

Ashley R. Larson, Esq.
Sutton | Booker | P.C.
4949 S. Syracuse St., Ste. 500
Denver, Colorado 80237
E-Mail: alarson@suttonbooker.com
Attorney for Defendant YMCA of Greater Montgomery

I further certify that a copy of the foregoing was mailed, postage prepaid, to any party who is not registered to receive electronic service via CM/ECF, at their address of record, including:

E-GYM North America, Inc.
1401 17th Street Suite 1500

Denver, Colorado 80202
Defendant

Respectfully submitted,

**/s/ Dawn May Bunch**
Dawn May Bunch
Plaintiff, Pro Se
723 Common Widgeon Way
Hopkins, South Carolina 29061